UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:13-cv-00035 |
| v. | Magistrate Judge Alistair E. Newbern |
| DAVID FLORENCE, | |
| Defendant. | |

**MEMORANDUM ORDER**

For more than a year, the United States has sought production from Defendant Dr. David Florence of patient files related to prescriptions it has identified as relevant to this False Claims Act litigation. Now, with the trial date swiftly approaching, Florence's production of those patient files remains, by his own account, incomplete. The United States therefore seeks sanctions against Florence, including an adverse inference jury instruction, for failure to comply with the Court's prior orders requiring the files' production. (Doc. Nos. 218, 226.) For the following reasons, the United States' motion will be GRANTED.

## I.     PROCEDURAL HISTORY

This case originated as a sealed *qui tam* proceeding against dozens of individual and corporate defendants filed on May 3, 2013 (Doc. No. 1). The United States served a civil investigative demand on Florence in his capacity as the registered agent for Cookeville Pain Consultants of Putnam County on April 25, 2014. It served a civil investigative demand on Florence personally on April 2, 2015. The case was unsealed on January 6, 2016 (Doc. No. 34), and Florence waived service through his first attorney on February 1, 2016 (Doc. No. 38). Over

the ensuing months, the case remained largely dormant on the Court's docket as the United States settled its claims against every defendant but Florence. On July 3, 2018, Florence's current attorney entered an appearance of counsel and the parties informed the Court that the case against Florence would proceed to trial.

Florence is the owner of the Center for Advanced Medicine in Manchester, Tennessee, and the United States' motion for sanctions concerns forty-one patient records related to sixty-five prescriptions written on Center for Advanced Medicine prescription forms. (Doc. No. 220.) The United States has also sought production of additional files for patients to whom Florence wrote prescriptions at other facilities, creating a total of eighty-four requested patient files. The sanctions imposed by this order apply only to the forty-one Center for Advanced Medicine files.

On December 21, 2018, the Court ordered Florence "to produce Bates-stamped copies or scanned versions of all patient files requested by the United States that are in his custody or control by January 18, 2019." (Doc. No. 196.) The Court noted that the United States had offered to copy or scan the files at its own expense and ordered Florence "to continue searching for any patient files not yet recovered while the copying takes place." Finally, the Court ordered Florence to state the location and custodian of any file not in his control or, if the file could not be located, to confirm that fact. (*Id.*)

On January 23, 2019, the United States informed the Court that Florence had not produced any files in response to the Court's order. (Doc. No. 202.) In response to the United States' inquiries, Florence's office manager, Lori McGowan, had stated that this was because the office had run out of copier toner. (*Id.*) Florence's counsel responded to the United States' filing with a narrative account of his attempts to comply with the Court's order stating, in essence, that the United States had requested more files than anticipated, that they were working with a local

2

printing company to comply with the production order, and that it had been an arduous process to locate and copy the requested files. (Doc. No. 203.) The Court ordered the parties to file a joint report on the status of production by January 28, 2019. (Doc. No. 204.)

The parties' joint response stated that Florence had not yet produced any of the requested eighty-four patient files. (Doc. No. 206.) According to the report, Florence's counsel informed the United States on January 25, 2019, that he had copies of eighteen patient files to produce. On January 28, Florence's counsel informed the United States that Ms. McGowan was ill and the search for the remaining 66 patient files had therefore not continued. (*Id.*) Florence's counsel could not predict when those files would be located and copied.

On May 6, 2019, the Court ordered Florence to provide to the United States by no later than May 17, 2019, an itemized list of the eighty-four requested patient files that stated, for each file, (1) that the file has been located, copied, and produced to the United States; (2) that the file has been located in Florence's control and is available for copying by the United States or has been copied by Florence and is ready for production; (3) that the file has been located and is held by an identified custodian at an identified location; or (4) that the file has not been located, despite Florence's good-faith efforts to discovery it. (Doc. No. 212.)  The Court also ordered Florence to provide "a statement of what steps he has taken to discover any file that has not been located." (*Id.*) The Court authorized the United States to file a motion to compel if Florence did not comply with this order. (*Id.*)

On May 17, 2019, Florence filed a "court ordered response," in which he categorized the 84 patient files as follows: (1) twenty-two files produced to the United States; (2) seven files promised but not yet produced; (3) eleven unproduced files for patients whom Florence saw at McMinnville Medical Consultants; (4) four unproduced files for patients Florence believes he saw

at Unity Hospital; (5) two unproduced files for patients Florence saw at North Medical; (6) one file for a patient from the Center for Advanced Medicine for whom the United States already had a record; (7) twenty-four files for patients whose names Ms. McGowan did not recognize and who she therefore did not believe to have been Florence's patients at the Center for Advanced Medicine; and (8) twelve files for patients whose names Ms. McGowan did recognize, but for whom no records had been located. (Doc. No. 215.) Florence stated that it was his practice to keep patient records in paper files in his office for any patient seen within two years. If a patient has not been seen in two years, Florence moved the file to a storage facility. Regarding off-site record storage, Florence stated that he uses multiple storage facilities and that, because "boxes get shifted around" and records "might or might not be at the same facility," files in storage are "just very difficult to locate." (*Id.*)

Florence states that he lost some charts after two floods that affected his current storage facility, although he "can't say whether any of those records are on this list or not . . . ." Florence also recounts the following incident:

> [A]t approximately this time last year, we were behind on our rental payment for one of the storage facilities wherein we had medical records stored and unbeknownst to us until after it was done, the owner of that facility when he got frustrated with our late payment, removed all the records and contents we had in the storage unit and destroyed them and how I learned of this is I got a call one day from a sanitation worker in the city that called me and said that it appeared that someone had dumped a huge amount of not only medical records, but some personal stuff pertaining to me in the garbage dumpster and when I got there to check because of the condition and heavy rain they were all totally destroyed and there was nothing really that I could retrieve, but just found out that that had occurred. Obviously I've not rented another facility from that company.

> (*Id.*)

Instead of filing a motion to compel, on May 28, 2019, the United States filed a motion for discovery sanctions under Federal Rule of Civil Procedure 37. (Doc. Nos. 219, 226.[1]) It cites four ways in which Florence has violated the Court's May 6, 2019 order: "(1) the non-production of 19 patient files, (2) the incomplete production of 22 patient files that render them irrelevant to the dates of service at issue, (3) the failure to produce 7 patient files he recently located, and (4) his failure to conduct a good faith search for the files and to itemize the files and other location and custodian where they exist." The United States confirmed that it had obtained forty-five patient files, twenty-two of which had been produced by Florence and the remainder of which had been obtained by subpoena. The United States obtained eleven subpoenaed patient files from McMinnville Medical Consultants, four from Unity Medical,[2] and two from North Medical. The United States also asserted that several patients whose names Ms. McGowan did not recognize were patients at the Center for Advanced Medicine for whom Florence should have records.

Based on this asserted incomplete production, the United States asked the Court to impose an adverse inference jury instruction that, for the prescriptions to patients for whom the relevant medical file information had not been produced, it be taken as established that:

> the controlled substance prescriptions (1) were not issued for a legitimate medical purpose, were not used for medically accepted indications, and therefore were not payable Medicare Part D drugs, (2) were not valid prescriptions under Tennessee law and were therefore not covered Medicare Part D drugs, and (3) were not issued by Florence or an individual whom he supervised for a legitimate medical purpose acting in the usual course of their professional practice and did not contain accurate, complete, and truthful information about all date related to payment . . . .

---

[1] The United States filed its original motion for sanctions (Doc. No. 219) on May 28, 2019, and a corrected motion for sanctions (Doc. No. 226) on June 6, 2019. This Order refers to the corrected motion for sanctions in its analysis.

[2] The United States also received a partial patient chart from Unity Medical for the patient identified as GG that includes excerpted documents showing that GG was also seen at the Center for Advanced Medicine. (Doc. No. 229.)

(Doc. No. 227, PageID# 2083.)

Florence responded in opposition (Doc. No. 232), citing several circumstances that had prevented his compliance with the Court's order: (1) that Ms. McGowan had been ill and "was in no condition to be copying [files]" during the ordered timeline; (2) that, after Ms. McGowan's recovery, it "slipped her mind" and Florence's counsel's mind that they had agreed to produce the seven recently located patient files; and (3) that "since Dr. Florence has worked as supervising physician at a lot of different clinics[, . . . ] he would not own the records or have the patient files, for they are not technically his patients as such." (*Id.*)

The Court held a case management conference on February 19, 2020, to ascertain the status of additional file production. Florence's counsel confirmed that he had not yet produced to the United States the seven patient files first promised in May 2019 and stated that, although he had brought six of the files to deliver in that day, one file could no longer be found. Florence's counsel also confirmed that none of the other requested files could be located.

## II. LEGAL STANDARD

The United States seeks sanctions against Florence under Federal Rule of Civil Procedure 37(b)(2) for his failure to obey the Court's May 6, 2019 discovery order. Sanctions under Rule 37(b)(2) may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2). Federal courts also have the ability to manage the discovery process by sanction stemming from their inherent power "to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Courts' power to impose sanctions for discovery abuses reflects "the need to preserve the

integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). Here, the United States alleges that Florence's failure to obey the Court's discovery order includes the spoliation of evidence. Because the intentional destruction of evidence necessarily hinders the jury's ability to decide a case based on a full understanding of the facts, a proper spoliation sanction will serve "both fairness and punitive functions" by "leveling the evidentiary playing field" and deterring other litigants from engaging in similar conduct. *Adkins*, 554 F.3d at 652 (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

"[A] party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)); *Silvestri*, 271 F.3d at 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."); *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005) ("The trigger date is the date a party is put on notice that it has a duty to preserve evidence."). "While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Kemper Mortg., Inc. v. Russell*, No. 3:06-CV-042, 2006 WL 2319858, at *2 (S.D. Ohio Apr. 18,

2006) (quoting *William T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1445 (C.D. Cal. 1984)).

"Destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality. The resulting penalties vary correspondingly." *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988), *overruled on other grounds by Adkins*, 554 F.3d at 652. "An adverse inference instruction 'is appropriate if the [sanctioned party] knew the evidence was relevant to some issue at trial and . . . [its culpable] conduct resulted in its loss or destruction.'" *Ross v. Am. Red Cross*, 567 F. App'x 296, 302 (6th Cir. 2014) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)). To impose an adverse inference instruction, the moving party must establish:

> (1) [T]hat the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.*

In this analysis, "even negligent conduct may suffice to warrant spoliation sanctions under appropriate circumstances." *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) (quoting *Beaven*, 622 F.3d at 554).

In crafting an appropriate sanction, the Court should consider the level of Florence's culpability, the prejudice to the United States' ability to prosecute its claims, and whether other less-severe sanctions are appropriate. *See Pollard v. City of Columbus, Ohio*, No. C2-11-CV-0286, 2013 WL 5334028, at *6 (S.D. Ohio Sept. 23, 2013); *Barrette Outdoor Living, Inc. v. Mich. Resin Representatives*, No. 11-13335, 2013 WL 3983230, at *17–19 (E.D. Mich. Aug. 1, 2013); *Jain v. Memphis Shelby Cty. Airport Auth.*, No. 08-2119-STA-DKV, 2010 WL 711328, at *2–3, 5 (W.D.

Tenn. Feb. 25, 2010); *Adkins*, 554 F.3d at 652–53. "When . . . a plaintiff is unable to prove an essential element of [its] case due to the negligent loss or destruction of evidence by an opposing party, . . . it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence." *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002) (quoting *Welsh*, 844 F.2d at 1248)).

### III.    ANALYSIS

The United States seeks sanctions under Rule 37(b)(2) for Florence's failure to produce the requested files of forty-one Center for Advanced Medicine patients, identified through sixty-five prescriptions written on Center for Advanced Medicine prescription pads. Specifically, the United States asks the Court to instruct the jury that it has been established that these prescriptions were not payable under Medicare Part D because they were not written for medically accepted indications, were not valid under Tennessee law, were not issued for a legitimate medical purpose in the usual course of professional practice, and did not contain accurate and complete information. (Doc. No. 227.) The United States also asks the Court to prevent Florence from presenting defenses or introducing evidence regarding the sixty-five prescriptions.

There is no question that Florence has failed to comply with the Court's May 6, 2019 order in several ways. First, Florence did not produce to the United States a list of the eighty-four patient files itemized in the way that the Court ordered. The Court ordered Florence to designate each of the eighty-four files in one of four categories directly related to their ability to be produced. Instead, Florence offered a free-form listing, apparently based largely on Ms. McGowan's memory, that did little to assist in locating the files. Second, Florence did not produce the seven files that he did locate by May 17, 2019, as he was ordered to do, because it slipped his counsel's mind to do so.

When his counsel finally produced these files on February 19, 2020—nine months late—one had gone missing. Third, Florence's filings give little confidence that he has made a good-faith effort to locate the missing files. Although Florence states that he "[does not] see how we could do anything more than what we have been doing," his efforts at production have been blatantly inadequate. (Doc. No. 232.) Sanctions are appropriate under Rule 37(b)(2).

The United States argues that the patient files are relevant to its claims in this case that Florence caused pharmacies to dispense controlled substances without a valid prescription written for a legitimate purpose; caused Medicare to pay for controlled substances not used for a medically accepted indication and issued without a legitimate medical purpose; and caused the submission of false statements to Medicare in violation of the False Claims Act. (Doc. No. 227.) Florence does not dispute the relevance of this information. The Court finds that a reasonable juror could find that it would have supported the United States' claims.

The Court must therefore determine what sanction will best remedy the loss of relevant evidence while also ensuring that the jury decide the case on the merits to the best of its ability. That determination begins with the question of whether Florence had an obligation to preserve the patient files at the time they were lost or destroyed. The United States argues that Florence's duty to preserve evidence relevant to this litigation began no later than April 2, 2015, when it served him personally with a civil investigative demand. That demand requested "[a]ll of your patient files, including all medical records and documents, for the patients listed in Attachment A. The time period for such patient files includes the entire period covered in the file." (Doc. No. 228-2.) The United States also argues that Florence "is already legally required to keep and maintain all of the requested patient files for 10 years under Tennessee law . . . ." (Doc. No. 227.)

Based on the argument made in the United States' motion, the Court finds that Florence acquired a duty to preserve patient files on April 2, 2015, when he was served with a civil investigative demand for certain patient files related to this litigation. However, the scope of that duty is not clear from the United States' filings. Certainly, it includes full records for the patients included in Attachment A. But, having been so specifically limited, the Court has no basis to find that it extended further, and the United States cites no broader notices to Florence that litigation against him was contemplated. A general duty to preserve all patient files with information potentially relevant to the claims of this litigation thus did not attach until February 1, 2016, when Florence was served. (Doc. No. 36.)

To the extent the United States argues that Tennessee's regulatory requirement that doctors preserve patient records for at least ten years, Tenn. Comp. R & Regs. 0880-02-.15(4)(f), imposed a duty on Florence to preserve his patient files for purposes of this case, that argument fails on the record now before the Court. The obligation created under Tennessee law only provides grounds for a spoliation sanction where the party moving for sanctions is "a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001) (superseded in part by Fed. R. Civ. P. 37(e)); *see also Talavera v. Shah*, 638 F.3d 303, 311 (D.C. Cir. 2011); *Rivera v. United Parcel Service*, 325 F.R.D. 542, 549 n.11 (S.D.N.Y. 2018). The United States has not argued or shown that it belongs to the class of persons intended to be protected by the Tennessee regulation it cites.

Accordingly, the Court finds that Florence had a duty to preserve patient files for the patients included in Attachment A of the United States' April 2, 2015 civil investigative demand as of that date. Florence had a general duty to preserve all information that he could reasonably expect to be requested in this litigation that began on February 1, 2016.

The question thus becomes what patient files were in Florence's control on that date. Florence has given the Court very little information from which to make that determination. Florence states that his "normal practice" is to keep patient files in his office until two years after the patient's last visit. (Doc. No. 215.) The files are then transferred to off-site storage. (*Id.*) Florence does not cite any regular practice of destroying files after a period of time. Florence states that he lost some records due to flooding, but gives no indication of when those floods occurred. The Court may therefore infer that Florence retained full patient files indefinitely; had all of the relevant patient files in his control on February 1, 2016; and had a duty to preserve the full files after that date.

The next step in crafting an appropriate sanction is determining Florence's state of mind with regard to the missing evidence. As detailed above and by his own description, Florence's record-keeping efforts are haphazard at best. Particularly as to the files that wound up in a public dumpster, they are sometimes dangerously negligent. A negligent state of mind can support an adverse inference instruction and, given the level of negligence demonstrated by Florence's filings, it does so in this case.

The United States argues that it has been prejudiced by the loss of the patient files related to the prescriptions that are the foundation of its case and will be irreparably hindered in its ability to prove the purpose for which those prescriptions were written. Florence has not addressed this prejudice and does not argue that there is other proof on which the United States could proceed. A strong sanction is therefore appropriate. However, the sanction that the United States requests is, in effect, dispositive of its claims as to each of the subject prescriptions. That highest level of sanction usurps the jury's function and is generally imposed only upon a finding of intentional spoliation. *See Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 387 (6th Cir. 2013). "When . . . a

plaintiff is unable to prove an essential element of [its] case due to the negligent loss or destruction of evidence by an opposing party, . . . it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence." *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002) (quoting *Welsh*, 844 F.2d at 1248)).

The Court finds that a permissive adverse inference instruction best serves its objectives of leveling the evidentiary playing field, deterring such patently negligent conduct by litigants, and allowing the jury to decide this case on its merits. The Court will therefore impose the following sanction under Rule 37(b)(2):

The jury will be instructed that it may presume that all of the patient files related to the prescriptions for which the United States has requested an adverse inference instruction (Doc. No. 220-1) were in Florence's control and that Florence had a duty to preserve those files.

The jury will be instructed that Florence breached that duty by allowing the patient files to be lost or destroyed.

For each prescription for which the United States has requested an adverse inference instruction (Doc. No. 220-1) and for which no patient file has been produced by Florence as of the date of this Order or for which the patient file Florence has produced does not contain records for the relevant date of service, the jury may conclude (1) that the patient file would have contained information to show whether the prescription was issued for a legitimate medical purpose or used for medically accepted indications; (2) that the patient file would have contained information to show whether the prescription was issued by Florence or a person whom he supervised for a legitimate medical purpose in the usual course of their professional practice; and (3) that the patient

file would have contained information to show whether the prescription contained accurate, complete, and truthful information about all data related to the payment.

The jury will be instructed that it may presume that the information contained in the patient files would have supported the United States' position as to each of these claims and would have been adverse to Florence's defenses.

Florence will be prohibited from introducing any evidence that would have been contained in any of the subject patient files in support of his defense of these claims.

## IV. CONCLUSION

The United States' Corrected Motion for Sanctions (Doc. No. 226) is GRANTED and its initial Motion for Sanctions (Doc. No. 218) is FOUND MOOT.

It is so ORDERED.


_____
ALISTAIR E. NEWBERN
United States Magistrate Judge