UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. DEBRA NORRIS, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID G. FLORENCE, <br><br> Defendant. | Case No. 2:13-cv-00035 <br><br> Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

In this *qui tam* action, the United States alleges that Defendant David G. Florence, violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and common law by billing Medicare for (1) controlled substances that Florence or nurse practitioners under his supervision prescribed for non-medically-accepted indications, without a legitimate medical purpose, or without legal authorization; and (2) office visits and Medicare services that were non-payable or billed at excessively high levels. (Doc. No. 77.)

Before the Court is Florence's motion to compel discovery. (Doc. No. 246.) Florence asks this Court to order the production of (1) responses to two interrogatories previously served on the United States and (2) all investigative reports prepared by Special Agent Richard Haines during the federal investigation of Florence. (*Id.*) The United States responded in opposition to Florence's motion to compel (Doc. No. 250), and Florence filed a reply (Doc. No. 256). The United States then filed a motion for leave to file a sur-reply, attaching the proposed sur-reply and two exhibits (Doc. Nos. 258–258-3). Florence opposed the United States' motion for leave to file a sur-reply (Doc. No. 259) and objected to what he termed an unauthorized submission (Doc. No. 260),

arguing that the United States acted improperly by attaching its proposed sur-reply to the motion for leave to file it.

For the reasons below, the United States' motion for leave to file a sur-reply (Doc. No. 258) will be granted and Florence's motion to compel (Doc. No. 246) will be denied.

## I.     Factual and Procedural Background

The discovery deadlines in this case have been extended multiple times over the course of several years. The case management order entered on August 3, 2018, set a discovery deadline of November 20, 2018, and a discovery motion deadline of December 3, 2018. (Doc. No. 175.) After delays in Florence's production of patient files, the Court extended both deadlines to January 22, 2019. (Doc. Nos. 182, 186.) On May 6, 2019, when Florence still had not produced the relevant files, the Court ordered Florence to produce the files by May 17, 2019, and extended the fact discovery deadline to June 28, 2019, and the discovery motion deadline to July 12, 2019. (Doc. Nos. 212, 213.) The Court extended the discovery period once more, to July 5, 2019, on the United States' motion. (Doc. No. 224.)

Florence states that, on June 17, 2019, he sent a proposed stipulation of discovery dispute to the United States addressing the issues he now raises in the present motion to compel so that he could file the joint discovery dispute statement required by the Court's case management order (Doc. No. 246. The parties could not agree on a joint stipulation; Florence never filed any statement of the dispute, nor did he otherwise notify the Court of the conflict. More than eight months later, on February 25, 2020, Florence filed the present motion. (*Id.*)

## II.    Legal Standards

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil

Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). A motion to compel discovery may be filed in a number of circumstances, including when "a party fails to answer an interrogatory submitted under Rule 33[,]" or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or response" is considered "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

**III. Analysis**

    **A. The United States' Motion to File a Sur-Reply**

As a preliminary matter, the Court will grant the United States' motion for leave to file a sur-reply. The court may grant leave to file a sur-reply where "'the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Kivilaan v. Am. Airlines, Inc.*, No. 3:04-0814, 2008 WL 11390792, at *1 (M.D. Tenn. Oct. 17, 2008) (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002)). "[A]s a matter of course the surreply is often filed as an attachment to a party's motion for leave before

leave has been granted by the Court." *Hobbs v. Am. Sec. Ins. Co.*, No. 3:08-cv-000471, 2010 WL 456862, at *2 (W.D. Ky. Feb. 3, 2010); see also *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 869 (S.D. Ohio Mar. 10, 2017) (granting motion for leave to file a sur-reply and considering the attached sur-reply in fashioning an order).

The Court finds that the United States has shown good cause in support of its motion to file a sur-reply. In his reply, Florence raised for the first time an argument that the United States attempted to answer the interrogatories in dispute by "[c]iting a bunch of rules or reference to manuals[.]" (Doc. No. 256, PageID# 2267.) The United States addresses this argument in its sur-reply by showing that it supplemented its responses to Florence's interrogatories with two expert reports, which the United States provides. (Doc. Nos. 258-1–258-3.) The information in these expert reports is necessary to address Florence's allegation that the United States failed to respond adequately to his interrogatories. Therefore, the motion for leave to file a sur-reply will be granted and the United States' sur-reply and exhibits will be considered.

### B. Timeliness of Florence's Motion to Compel

The United States argues that Florence's motion should be dismissed as untimely because it was filed well after the agreed-upon discovery period closed. The trial court's broad discretion to decide discovery matters extends to the decision to deny a motion to compel "'where the motion to compel was filed after the close of discovery.'" *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000)); *see also Craig-Wood v. Time Warner N.Y. Cable LLC*, 549 F. App'x 505, 508 (6th Cir. 2014) (collecting cases for the proposition that "[i]n general, a district court does not abuse its discretion by denying an untimely motion to compel that violated unambiguous discovery deadlines.").

Florence's motion to compel is untimely. Under the terms of the most recent scheduling order, discovery motions were due by July 12, 2019. (Doc. No. 213.) Florence filed the pending motion to compel discovery on February 25, 2020 (Doc. No. 246), over seven months after the parties' agreed-upon deadline for filing discovery motions had passed. Granting Florence's request to compel production would therefore require the Court to modify the scheduling order, which it may only do upon a showing a of good cause. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Where a party seeks to extend a deadline after it has already passed, Rule 6(b) allows extension only where "the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also Gardner v. Dye*, No. 3:15 C 00669, 2016 WL 9244200, at *4 (M.D. Tenn. July 1, 2016) ("While Rule 16 (and its associated local rule) and Rule 6(b) overlap to some degree, we find that Rule 6(b)(1)(B) provides the appropriate standard, particularly where, as here, a party seeks an extension after a deadline has already passed.").

While pre-deadline requests for extension may be granted "with or without motion[,]" post-deadline requests may only be granted "on motion[.]" Fed. R. Civ. P. 6(b)(1)(A)–(B); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 n.5 (1990) (expressing doubt as to whether a request that "not only did not ask for any *particular* extension of time . . . [but also] did not specifically ask for an extension of time *at all*" would qualify as a motion for extension of time under Rule 6(b)).The Court determines whether a party's failure to file before the relevant deadline was the result of excusable neglect by balancing five factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*,

467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Florence has not acknowledged the untimeliness of his motion to compel discovery or moved to extend the deadline for discovery motions as Rule 6(b) requires. *See* Fed. R. Civ. P. 6(b)(1)(B). Even if the Court were to construe Florence's untimely motion to compel as a request to extend the discovery motion deadline, Florence has not presented any evidence that his failure to file a timely motion to resolve this dispute was the result of excusable neglect. He has not explained the reason for his delay, whether the delay was within his reasonable control, or whether he acted in good faith. *See Nafziger*, 467 F.3d at 522. Although the United States has not argued that it would be prejudiced by an extension, the Court finds no good cause for further delay in these proceedings. The Court will not extend the discovery motion deadline. Further, even if Florence had sought to compel answers to his interrogatories within the discovery deadline, his arguments in favor of a motion to compel lack merit, as explained below.

### C. Responses to Interrogatories

Florence argues that the United States failed to respond to interrogatories that asked (1) "what was the standard applicable during that time period for a supervising physician"; and (2) "wherein and how did Dr. Florence breach that standard?" (Doc. No. 246.)

On November 3, 2018, the United States responded to these interrogatories as follows:

> [T]he United States generally contends that every controlled substance prescription that Florence issued, or for which he supervised the issuance, must have been (1) reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body part, (2) issued for a legitimate medical purpose by Florence or the person whom he supervised acting in the course of his or her professional practice, and (3) a valid prescription under Tennessee law. Controlled substance prescriptions may not be issued for recreational use. Further, the United States contends that, under Tennessee law, prescribing controlled substances in amounts or for durations that are not medically necessary is beyond the scope of professional practice.

(Doc. No. 250-1, PageID# 2216–17.) On December 20, 2018, the United States supplemented its response, reiterating the quoted language above and adding:

> *See* Amended Complaint, ¶¶ 78–86 (listing the requirements with which osteopathic physicians like Florence must comply, such as Tenn. Comp. R. & Regs. § 1050-02-.13(2); the requirements that a supervising physician review at least twenty percent of all patient charts every thirty days and shall personally review patient information for every controlled substance prescription every ten days and certify this by their signature and to have control over the mid-level practitioners prescription services, *see* 42 C.F.R. § 410.75, Tenn. Code. Ann. §§ 63-7-123(b)(2)(B), 63-7-126(f); Tenn. Comp. R. & Regs. §§ 0880-02-.14, 0880-6.01 & .02, 1050-02-.01, -.13, & -.15; and the requirements for pain management clinics and their medical directors, *see* Tenn. Code Ann § 63-1-301 & -311; Tenn. Comp. R. & Regs §§ 1200-34-01 *et seq.*[]. Moreover, Florence had a responsibility to ensure that he complied with all of these requirements for all controlled substance prescriptions that he personally wrote, that were written by a provider for whom he served as a supervising physician, or that were written from a clinic for which he served as a medical director. The United States generally contends that Florence breached the applicable standards for the controlled substance prescriptions and will supply additional detail on this at the applicable deadlines for expert reports.

(Doc. No. 250-2, PageID# 2227.)

The United States later provided Florence with two expert witness reports from Dr. Kathryn Rankin, who opines that Florence's pain management practices were "frequently consistent with pill mill prescribing." (Doc. No. 258-2, PageID# 2282.) Dr. Rankin lists specific patterns she observed in her review of Florence's practices that she believes indicate a breach of the applicable legal standard, including:

> prescriptions not supported by the medical record, prescriptions that were consistent with pill mill prescribing, care that contributed to the death of four Medicare beneficiaries, medical records that appeared altered (S.D.) or fabricated (J.W.), a pattern of prescribing high [Morphine Equivalent Doses] for chronic non-cancer pain, a pattern of prescribing well-known drug cocktails consisting of multiple controlled substances, [and] a general pattern of poor documentation that may be representative of fabricated records and poor care.

(Doc. No. 258-3, PageID# 2284.)

Florence objects that these expert reports address the standards applicable to prescribers of medication, not those applicable to supervising physicians, and are therefore not responsive to his interrogatories. (Doc. No. 260.)

Florence's objection is without merit. The United States' responses to Florence's interrogatories were not "evasive or incomplete" and do not warrant a motion to compel a further response. Fed. R. Civ. P. 37(a)(4). In response to Florence's request for "[t]he standards applicable for his position at the applicable time of each claim" and "[t]he manner in which Dr. Florence allegedly breached that standard[,]" the United States set forth the applicable legal standards for physicians who prescribe controlled substances and supervise other providers. (Doc. No. 250-1, PageID# 2215.) When the United States supplemented its response, it provided Florence with the relevant statutes and regulations governing the conduct of prescribing and supervising physicians. (Doc. No. 250-2.) The United States also provided expert reports that gave detailed descriptions of the applicable legal standards and an analysis of how the United States' expert believes Florence breached those standards. (Doc. Nos. 258-2, 258-3.) The United States has fully responded to Florence's interrogatories regarding the standard for both prescribing and supervising physicians and provided its expert's opinions applying those standards to Florence's conduct. No additional response to Florence's interrogatories is required.

### D. Production of Special Agent Haines's Investigatory Reports

Florence also moves to compel production of investigative reports compiled by Special Agent Richard Haines in the course of the United States' investigation of Florence. (Doc. No. 246.) Florence's counsel deposed Haines on February 12, 2019. (*Id.*) Florence does not dispute that Agent Haines was deposed in his personal capacity and not as a representative of a governmental agency or any other organization.

Florence bases his motion to compel on the following passages of Haines's deposition:

> Q. Okay. Tell me what you remember now about the case. Lay it out, what you remember, because you are having trouble, seems like, remembering things. So I want to know what you remember about the Anderson-related clinics.
>
> A. What I remember about the Anderson-related clinics was there was a clinic in Cookeville, a clinic in Harriman, a clinic in Gruetli-Laager, and a clinic in McMinnville, and there was a question—there were multiple nurse practitioners that worked at those clinics that were prescribing high quantities of opioid-controlled substances. There were various supervising physicians purportedly from—during various times, and there were office billing—or office staff that performed billing. I remember that we obtained the financial records to try to follow the money. I remember that we tried to interview the nurse practitioner staff. We attempted to interview—I believe we attempted to interview the physicians. We attempted to interview and locate some of the former non-practitioner staff. There was a laboratory company out of Kentucky that was involved.
>
> . . .
>
> Q. Okay. So you are telling us as the investigator of this case for a period of now about going on six years, that is the extent of your knowledge and your recollection or remembrance of what you know about the case?
>
> . . .
>
> A. Mr. Huskey, without seeing any documents or records or reports, I just—I have a lot of cases and I just don't recall. This has been a very lengthy six year investigation. The last, I would say, year to year and a half hasn't involved much of my time to this particular investigation.
>
> Q. Well, did you review any of your records, particularly the ones that you created, or reports that you made, prior to this deposition so you would be prepared to answer the questions?
>
> A. No, sir.

(Doc. No. 246-3, PageID# 2194–95.)

On February 18, 2019, Florence served a request for production of Haines's "interim reports or progress reports[.]" (Doc. No. 246-1, PageID# 2181.) Florence argues that Haines's failure to review his investigatory reports before his deposition and inability to recall the specific content of those reports necessitated this production.

9

The United States objected to Florence's request for production as untimely because "'it was sent . . . less than 30 days before the previous, jointly agreed-upon February 28, 2019 cut-off date for fact discovery in this case[.]" (Doc. No. 250, PageID# 2206 (first alteration in original) (quoting Doc. No. 250-3, PageID# 2234).) The United States also objected on the grounds that Haines's reports are subject to the work product doctrine because they were prepared in anticipation of the United States' current action against Florence. (Doc. No. 250.) The United States reiterates both arguments in opposition to Florence's motion to compel these reports. (*Id.*)

Florence argues that attorney work product privilege does not apply to Haines's investigatory reports because they were not prepared by government counsel. (Doc. No. 256.) Florence further contends that he should have been able to obtain the information contained in Haines's reports through Haines's deposition testimony but was unable to do so because Haines did not review the reports before being deposed. (*Id.*) Florence argues that Haines intends to review the reports before he testifies at trial and that disclosure of the reports should be required because it is "the only way we will have an opportunity to know what [Haines] is going to testify to . . . ." (*Id.* at PageID# 2270.)

Florence does not provide a basis for the Court to compel production of Special Agent Haines's investigatory reports. The United States maintains that, even if Florence's request for these documents had been timely, Haines's investigative reports are protected by the attorney work product doctrine. (Doc. No. 250.) In his reply, Florence appears to argue that Haines's reports are not work product because they were not prepared by government counsel. (Doc. No. 256.) Longstanding authority contradicts Florence's position.

Rule 26(b)(3) codifies the protections for attorney work product that were first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). *See* Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment. The rule provides as follows:

> **(3)** *Trial Preparation: Materials*.
>     **(A)** *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>         **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>         **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii).

When determining whether a document was created in anticipation of litigation, a court considers factors including "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). The work product privilege protects "material prepared by agents for the attorney as well as those prepared by the attorney himself[,]" in recognition of the reality that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975).

The United States asserts that Haines's reports are protected by the work product doctrine because they were made at the request of counsel for the United States in the course of Haines's investigation of Florence for the purpose of this action. (Doc. No. 250.) Haines's reports thus fall directly within the category of work product contemplated by the Supreme Court in *Nobles*.

Further, Florence has not met his burden of demonstrating that he has a substantial need for the reports and cannot obtain their substantial equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Although the United States supplied Florence with the names of eighteen individuals likely to have discoverable information in this case (Doc. No. 250-4), Florence's account of his discovery efforts to date is limited to narrative descriptions of Haines's deposition alone.[1] (Doc. Nos. 246, 256.) Florence does not explain why other methods of obtaining the substantial equivalent of the information in Haines's reports would be insufficient. Therefore, even if the motion to compel were timely, it would not be granted because Florence has not established that there is a sufficient basis to compel production of Haines's investigatory reports.

---

[1] Florence appears to presume that Special Agent Haines's inability to recall some details of his investigation during his deposition entitles Florence to discovery of Haines's investigatory reports. Although he does not cite any authority to support this position, it appears that Florence may be basing this contention on a belief that Haines had a legal duty to review his investigatory reports to prepare for the deposition.

While Federal Rule of Civil Procedure 30(b)(6) places a duty on corporations, partnerships, associations, governmental agencies, and other entities to adequately prepare their designated witnesses to testify about the topics listed in the deposition notice, *see* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."); *see also United States ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009) (explaining that the "United States, like any other litigant, has the duty to prepare a [30(b)(6) deponent] to testify under oath on its behalf"), no such duty to prepare exists when a deponent testifies in his or her personal capacity. The United States' response states that Haines was deposed in his personal capacity, not as a Rule 30(b)(6) representative, and Florence offers no proof that he noticed Haines to be deposed in a representative capacity. (Doc. No. 250.) Because Haines was deposed in his personal capacity, he was not under a legal duty to review his investigatory reports to prepare for the deposition and his failure to do so does not support a motion to compel his investigatory reports.

## IV. Conclusion

For the foregoing reasons, the United States' motion for leave to file a sur-reply (Doc. No. 258) is GRANTED, and Florence's motion to compel discovery (Doc. No. 246) is DENIED.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge